## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **In re** | ) | |
| | ) | |
| **STEFAN JOSEPH LEER,** | ) | **Case No. 3:26-bk-00149** |
| | ) | **Chapter 7** |
| | ) | **Judge Nancy B. King** |
| **Debtor.** | ) | |

---

## MOTION FOR AN ORDER AUTHORIZING RULE 2004 EXAMINATION OF DEBTOR

Fred Stevens, in his capacity as receiver (the "Receiver") in the matter of *Teton Life LLC v. Golden Foothill Ins. Svcs., LLC, et al.,* Index No. 650582/2022 (N.Y.S. Sup. Ct.) (Hon. Nancy M. Bannon, J.S.C.) (the "New York Litigation"), by and through the undersigned counsel, moves for entry of an order authorizing and directing the examination of the above-captioned chapter 7 debtor, Stefan Joseph Leer, and authorizing the service of document requests upon Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and in support states as follows:

1. On January 14, 2026 (the "Petition Date"), Stefan Joseph Leer ("Debtor" or "Leer") filed a petition for relief under chapter 7 of the Bankruptcy Code.

2. As of 2021, Leer was in the business of acquiring life insurance policies via life settlements and/or viatical settlements. Using those owned life insurance policies (each, a "Policy") as pledged collateral (the "Collateral"), Leer, his wife, and five other entities owned in whole or in part by Leer (together, "Guarantors") guaranteed a $2.7M loan (the "Loan") made by Spin Capital, LLC ("Lender") to certain defendants in the New York Litigation ("Borrowers"). *See, generally*, Complaint, New York Litigation Docket Entry No. 1.

1

3. The Guarantors and/or Borrowers breached their obligations under the Loan, following which Lender filed suit resulting in the New York Litigation. *Id.*

4. On January 4, 2023, Fred Stevens was appointed temporary receiver in the New York Litigation by court order (the "Receiver Order"). Order, New York Litigation Docket Entry 245. Among Receiver's responsibilities were paying Policy premiums, ensuring maintenance of the Policies, and collecting and receiving proceeds from Policies. All parties in possession of Policy property were ordered to turn over the same to Receiver. *Id*.

5. Receiver was appointed following allegations that Debtor, Borrowers, and Guarantors were not properly protecting the Collateral by timely paying life insurance policy premiums and improperly transferring or assigning interests in various insurance policies to the detriment or benefit of certain lenders who asserted competing interests in those policies. Debtor's bad acts continued following Receiver's appointment.

6. By way of example, following the death of an insured under one such Policy, Receiver requested payment directly from an insurer, only to find out that Debtor, by and through a wholly owned entity, had submitted information deemed sufficient by the insurer to wire Policy proceeds in the amount of $1,985,367.42 to an account under Debtor's control and beyond the reach of Receiver.

7. On January 5, 2024, the court in the New York Litigation entered an order (the "Leer Turnover/Contempt Order"), wherein it held Debtor in civil contempt for failure to turn over Policy proceeds to the Receiver despite an order to do so. *See* Order, New York Litigation Docket Entry 467.

8. On April 26, 2024, the court in the New York Litigation entered an order (the "Leer Criminal Contempt Order"), wherein it held Debtor in criminal contempt for his failure to comply with prior court orders. *See*, Order, New York Litigation Docket Entry 509.

9. As a result of the Leer Turnover/Contempt Order and Leer Criminal Contempt Order and Debtor's continued failure or refusal to cooperate, on December 3, 2024, the court in the New York Litigation entered a judgment against Debtor (the "Leer Judgment") in the Receiver's favor in the amount of $2,230,197.11, plus interest. Order, New York Litigation Docket Entry 764. Through the Petition Date, the Leer Judgment accrued interest in the amount of $183,198.15 for a total judgment of $2,413,395.26.

## Relief Requested

10. Federal Rule of Bankruptcy Procedure 2004(a) provides that "[o]n a party in interest's motion, the court may order the examination of any entity."

11. "Rule 2004 examinations are designed for the purpose of discovering assets and unearthing frauds and have been compared to a fishing expedition." *In re Hyneman*, Case No. 11-23217 PDJ, 2011 WL 6369782, *2 (Bankr. W.D. Tenn. Dec. 19, 2011) (quoting *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985)).

12. The scope of a Rule 2004 exam is extremely broad. *In re Hyneman*, 2011 WL at *2 ("The intent of the Rule 2004 examination is to permit the trustee or other parties in interest to explore **any** matter which **may** affect the administration of the debtor's estate or to the debtor's right to a discharge."); *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Ten. 2000) ("The scope of a Rule 2004 exam is extremely broad and has often been liked to a lawful 'fishing expedition'").

13. The Receiver requests the Debtor produce the information requested (the "Requested Discovery") in **Exhibit A** pursuant to the definitions and instructions found therein for

the period beginning January 14, 2020 (unless otherwise stated) to the Receiver at the Receiver's counsel's office at Nelson Mullins, c/o Shane Ramsey, 1222 Demonbreun Street, Suite 1700, Nashville, TN 37203 on or before May 22, 2026.

14. The Receiver also requires a Rule 2004 examination of the Debtor and proposes to conduct the Rule 2004 examination of the Debtor at Nelson Mullins, 1222 Demonbreun Street, Suite 1700, Nashville, TN 37203, on June 8, 2026 at 9:00 a.m, or a date to be agreed upon by counsel.

15. A proposed order granting the motion is attached hereto as **Exhibit "B."**

**WHEREFORE,** the Receiver respectfully requests that the Court enter an Order substantially in the form of the proposed order attached hereto as Exhibit "B" authorizing the Rule 2004 examination and documents requests and for such other relief as the Court deems just and proper.

Dated: April 22, 2026

Respectfully submitted,

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By: /s/ *Shane G. Ramsey*
Shane G. Ramsey
1222 Demonbreun Street, Suite 1700
Nashville, Tennessee 37203
Telephone: (615) 664-5355
Facsimile: (615) 664-5399
Email: shane.ramsey@nelsonmullins.com

*Attorneys for Fred Stevens, in his capacity as receiver in the matter of Teton Life LLC v. Golden Foothill Ins. Svcs., LLC, et al., Index No. 650582/2022 (N.Y.S. Sup. Ct.) (Hon. Nancy M. Bannon, J.S.C.)*

4

**<u>Certificate of Service</u>**

I certify that on April 22, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Middle District of Tennessee.

/s/ *Shane G. Ramsey*
Shane G. Ramsey

5

## DEFINITIONS

1. "And" and "or" shall be interpreted conjunctively as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside the scope of the request.

2. "Date" means the exact date, month, and year, if ascertainable, or, if not, the best approximation thereof, with a statement that such is an approximation.

3. "Debtor" means Stefan Joseph Leer.

4. "Document" or "documents" means any kind of written or graphic material, however produced or reproduced, of any kind or description whether sent or received or neither, including originals, copies and drafts of both sides thereof, and including, but not limited to, papers, books, accounts, letters, photographs, objects, correspondence of any type, form or fashion, cables, memoranda, notes, notations, work papers, transcripts, affidavits, minutes or reports of telephone or other conversations, or of interviews, or of conferences, or of meetings, inter- or intra-office communications, inter- or intra-departmental communications, inter- or intra-company communications, resolutions, certificates, opinions, reports, studies, analyses, evaluations, contracts, licenses, agreements, ledgers, journals, books or records of account, summaries of accounts, balance sheets, interim statements, budgets, receipts, invoices, desk calendars, appointment books, diaries, lists, tabulations, summaries, sound recordings, computer tapes, magnetic tapes, microfilms, punchcards, and all other records kept by you and anything similar to the foregoing.

5. "Leer Entities" means Life Shares II, LLC, Life Shares 1019, LLC, Life Factor II, LLC and any other entity that Leer has a controlling or financial interest, directly or indirectly, including, but not limited to, any trust of which Leer is a beneficiary.

6

6. "New York Litigation" means the lawsuit currently pending in the Supreme Court of New York, Index No. 650582/2022 captioned *Teton Life LLC v. Golden Foothill Ins. Svcs., LLC, et al.*

7. "Petition Date" means January 14, 2026.

8. "Policy" or "Policies" means any insurance policies obtained by Debtor and/or Leer Entities that are the subject of the New York Litigation or other insurance policies of any type purchased, brokered, acquired, or obtained by Debtor and/or Leer through the business of acquiring life insurance policies via life settlements and/or viatical settlements.

9. "Policy Proceeds" means the $1,985,367.42 in death benefits on the John Hancock Life Insurance Company identified as Policy No. 59592683 on the life of John Utsick that Leer directly or indirectly through Life Shares 1019 LLC claimed and obtained.

10. "Relevant Period" means the time period beginning January 14, 2020, through present.

11. "You" means the Debtor, Stefan Joseph Leer.

12. The words "person," "individual," or "entity" mean a natural person, corporation, partnership, sole proprietorship, union, association, federation or any other kind of entity. The acts and knowledge of a person shall include the acts and knowledge of that person's directors, officers, members, partners, employees, representatives, agents and attorneys.

13. The terms "relate to," "relating to," "refer to," and "referring to" shall be construed to include any connection, direct or indirect, whatsoever with the requested information, without limitation unless specifically indicated.

7

## INSTRUCTIONS

1. You are required, in responding to the following requests, to obtain and furnish all information available to you and any of your representatives, employees, agents, brokers, servants, or attorneys and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, servants or attorneys.

2. Each request which seeks information relating in any way to communications to, from, or within a business and/or corporate entity, is hereby designated to demand and should be construed to include any and all communications by and between representatives, employees, agents, brokers and or servants of the business and/or corporate entity.

3. Each request should be responded to separately. However, a document which is the response to more than one request may, if the relevant portion is marked or indexed, be produced and referred to in a later response.

4. All documents produced shall be segregated and identified by the paragraphs to which they are primarily responsive. Where required by a particular paragraph of this request, documents produced shall be further segregated and as indicated in this paragraph. For any documents that are stored or maintained in files in the normal course of business, such documents shall be produced in such files, or in such a manner as to preserve and identify the file from which the documents were taken.

5. If you object to any part of a request, please furnish documents responsive to the remainder of the request.

6. Each request refers to all documents that are either known by you to exist or that can be located or discovered by reasonably diligent efforts.

8

7. The documents produced in response to this request shall include all attachments and enclosures.

8. The documents requested for production include those in possession, custody or control of Debtor, his agents, representatives or attorneys.

9. All documents called for by this request or related to this request for which you claim a privilege or statutory authority as a ground for non-production shall be listed chronologically as follows:

a. The place, date and manner of recording or otherwise preparing the document;

b. The name and title of the sender;

c. The identity of each person or persons participating in the preparation of the document;

d. The identity and title, if any, of the person or persons supplying Receiver's attorneys with documents requested;

e. The identity of each person to whom the contents of the documents have heretofore been communicated by copy, exhibition, sketch, reading or substantial of said communication, and the employer and title of said person at the time of said communication;

f. Type of document;

g. Subject matter (without revealing the relevant information for which the privilege or statutory authority is claimed); and

h. Factual or legal basis for claim, privilege or specific statutory or regulatory authority which provides the claimed ground for non-production.

9

10. Each request to produce a document(s) shall be deemed to call for the production of the original document or documents to the extent they are in or subject to, directly or indirectly, the control of the party to whom this request is addressed. In addition, each request should be considered as including a request for separate production of all copies, and to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not the original or other copies thereof.)

11. All documents produced in response to this request shall be produced in its complete form notwithstanding the fact that portions thereof may contain information not requested.

12. If any documents requested herein have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date and subject matter.

13. Where exact information cannot be furnished, estimated information is to be supplied to the extent possible. Where estimation is used, it should be so indicated, and an explanation should be given as to the basis on which the estimate was made, and the reason exact information cannot be furnished.

14. With respect to any document requested which was once in possession, custody or control, but no longer is, please indicate the date the document ceased to be in the possession, custody or control, the manner in which it ceased to be in your possession, custody or control, and the name and address of its present custodian.

15. Prior to providing copies of the requested documents, the party to whom such request is made shall first produce to the undersigned an itemized list of the available documents

10

and make such documents available for an initial inspection at a mutually convenient time and place.

16. If a refusal to answer a request is stated on the grounds of burdensomeness, identify the number and nature of documents needed to be searched, the location of the documents, and the number of hours and costs required to conduct the search.

## <u>REQUESTS</u>

Unless otherwise stated, Debtor is requested to provide any and all documents within his possession, custody, or control from the time period January 16, 2020, to present as follows:

1. All federal and state tax returns, including all schedule K-1s, all other schedules and documents related thereto which Debtor or any Leer Entity filed, either individually or jointly with any other person or entity.

2. Any personal or joint financial statement prepared by or for Debtor or any Leer Entity.

3. All financial statements and other reports, including without limitation all balance sheets, statements of profit and loss, statements of income and retained earnings, cash flow statements or forecasts, borrowing base certificates, accounts receivable agings, accounts payable agings and inventory reports prepared by or for Debtor or any Leer Entity.

4. All passbooks, and all bank statements relating thereto for any savings or other account at any bank, financial institution, savings institute or credit union, held by Debtor or any Leer Entity, whether in its own name solely or with any other person or entity, as principal, agent or trustee.

5. All bank or investment statements for any checking account, operating account, money market account, investment account, mutual fund account or any other account held in the name of Debtor, individually or jointly with any other person or entity, either as principal, agent or trustee, or held by any Leer Entity in trust, by pledge or otherwise.

6. All documents evidencing, referring or relating to the Policies owned at any time during the Relevant Period by Debtor or any of the Leer Entities, individually or jointly, in part or in whole, as principal, agent or trustee for others and all statements, invoices, and other documents in connection therewith.

7. For any Policy or Policies identified in Request No. 6 that You no longer own or have an interest in, any documents evidencing, referring, or relating to the sale of, transfer of, or receipt of proceeds from said Policy.

11

8. All documents evidencing, referring or relating to marketable or non-marketable securities of any kind whatsoever owned by Debtor or any of the Leer Entities, individually or jointly with any other person or entity, either as principal, agent or trustee for others and all statements, invoices, and other documents from brokers or brokerage services in connection therewith.

9. All documents evidencing, relating or referring to all securities held by any other persons or entities for Debtor in trust, by pledge or otherwise, and all statements, invoices, and other documents from brokers or brokerage services in connection therewith.

10. All documents evidencing, referring or relating to interest in any proprietorship, partnership, joint venture, limited liability company or corporation, of any and every kind, held or owned by Debtor, legally, beneficially, equitably or otherwise.

11. All documents related to the Leer Entities, including but not limited to, formation documents, operating agreements, by-laws, membership schedules, financial statements, tax returns, account statements, corporate minutes, resolutions, annual reports, capital account reports, etc.

12. All deeds, indentures, bonds, mortgages, title insurance policies, insurance policies (other than life insurance policies), leases, and other documents evidencing, referring, or relating to any legal or equitable interest in real estate owned by Debtor or any of the Leer Entities, in its own capacity or jointly with any other person or entity or in which Debtor or any Leer Entity has or had any interest of any kind whatsoever, or which some other person or entity holds or held for Debtor's or any Leer Entity's interest and any and all documents which reflect the transfer of any such property.

13. Any and all certificates of deposit, promissory notes or other evidence of indebtedness of any kind whatsoever owned by Debtor or any Leer Entity, in its own capacity or jointly with any other person or entity, or held by Debtor or any Leer Entity as agent or trustee, or by pledge or otherwise or which some other person holds for Debtor's or any Leer Entity's interest or otherwise.

14. All documents evidencing, referring or relating to Debtor's right to receive money or monies, however derived, from any source, including without limitation, royalties, retainers, accounts receivable, commissions, fees, judgments, interest, dividends and distributions.

15. The names and locations of all banks or other institutions in which Debtor or any Leer Entity rents, rented or had access to, a safe deposit box or similar facility.

16. All monetary instruments (including without limitation negotiable instruments) in Debtor's possession, custody or control in which Debtor or any Leer Entity has any legal or equitable interest of any kind whatsoever, or which someone else holds for any Defendant, in its own name or jointly, in trust or otherwise.

12

17.     All documents pertaining, referring or relating to any pension or profit sharing plan or account in which Debtor, individually or jointly, has or retains any pecuniary interest.

18.     With respect to any business venture other than the Leer Entities in which Debtor has been, individually or jointly, during the past eight years a principal, partner or shareholder (holding an equity interest of more than 10%), the following documents:

    a. All federal and state tax returns;
    b. All financial statements;
    c. Any appraisals of any assets owned by said entity; and
    d. Any ledgers or journal reflecting transactions.

19.     Any and all documents of any kind whatsoever evidencing, relating or referring in any way whatsoever to any real or personal property not covered by any of the foregoing requests in which Debtor or any Leer Entity has any legal or equitable interest of any kind whatsoever, individually or jointly with any person or entity.

20.     Any and all documents evidencing automobiles or motor vehicles sold or transferred by Debtor during the twelve (12) months preceding the Petition Date including VIN numbers, serial numbers, or other identifying information in connection with such automobiles.

21.     Any and all documents, accounts statement, financial statements and business records evidencing any sales, dispositions or transfers of Debtor's assets and the assets of the Leer Entities;

22.     Any and all documents or evidence regarding the Debtor's use of cash and other assets from his businesses including, but not limited to, the Leer Entities for his own personal benefit or the benefit of his family members;

23.     Any and all bank records for the Debtor and the Leer Entities;

24.     Any and all schedules, ledgers, and other accounting records of the Leer Entities;

25.     Any and all documents or information regarding any trusts in which the Debtor or his family has an interest;

26.     Any and all information regarding additional business entities owned by the Debtor that the Debtor has omitted from his bankruptcy schedules;

27.     All bank statements evidencing the deposit of the Policy Proceeds and its maintenance and interest accrual since the payout

28.     All documents concerning the loan against the Policy Proceeds, including the security and/or control agreement, application and promissory note

13

29.     All bank statements or other documents that show what the loan against the Policy Proceeds were used for.

14

# **Exhibit B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **In re** | ) | |
| | ) | |
| **STEFAN JOSEPH LEER,** | ) | **Case No. 3:26-bk-00149** |
| | ) | **Chapter 7** |
| | ) | **Judge Nancy B. King** |
| **Debtor.** | ) | |

---

## **ORDER AUTHORIZING RULE 2004 EXAMINATION**
## **OF DEBTOR AND REQUEST FOR DOCUMENTS**

THIS CASE came before the Court without hearing on the Motion for an Order Authorizing Rule 2004 Examination and Document Requests of the Debtor (Doc. No. ___) (the "Motion") brought by Fred Stevens (the "Receiver"), in his capacity as receiver in the matter of *Teton Life LLC v. Golden Foothill Ins. Svcs., LLC, et al.,* Index No. 650582/2022 (N.Y.S. Sup. Ct.) (Hon. Nancy M. Bannon, J.S.C.) (the "Receiver"). After reviewing the pleadings and finding that the Motion has merit, it is

**ORDERED:**

15

1. The Motion (Doc. No. __) is **GRANTED.**

2. The Debtor must produce the Requested Discovery, as defined in the Motion, on or before May 22, 2026.

3. The Debtor must appear for a Rule 2004 examination at Nelson Mullins, 1222 Demonbreun Street, Suite 1700, Nashville, TN 37203, on June 8, 2026 at 9:00 a.m., or a date to be agreed upon by counsel.

**This order was signed and entered electronically as indicated at the top of the page.**

APPROVED FOR ENTRY:

By: /s/ *Shane G. Ramsey*
Shane G. Ramsey
1222 Demonbreun Street, Suite 1700
Nashville, Tennessee 37203
Telephone: (615) 664-5355
Facsimile: (615) 664-5399
Email: shane.ramsey@nelsonmullins.com

*Attorneys for Fred Stevens, in his capacity*
*as receiver in the matter of Teton Life LLC*
*v. Golden Foothill Ins. Svcs., LLC, et al.,*
*Index No. 650582/2022 (N.Y.S. Sup. Ct.)*
*(Hon. Nancy M. Bannon, J.S.C.)*

16